UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBINSON MECHANICAL CONTRACTORS INC. d/b/a ROBINSON CONSTRUCTION COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:15CV77 SNLJ |
| PTC GROUP HOLDING CORP., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's motion to dismiss plaintiff's

amended complaint. The motion has been fully briefed and the matter is ripe for

disposition. For the following reasons, the motion will be granted in part and denied in

part.

## I.     Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to

test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally

flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of

unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627

(8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint

must be dismissed for failure to state a claim if it does not plead enough facts to state a

claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

560 (2007). A petitioner need not provide specific facts to support his allegations,

*Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F .3d 544, 549 (8th Cir. 2008), *cert. denied,* 129 S.Ct. 222 (2008) (quoting *Twombly,* 550 U.S. at 555–56 & n. 3).

In ruling on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the petitioner. *Scheuer v. Rhodes,* 416 U.S. 232 (1974); *Kottschade v. City of Rochester,* 319 F.3d 1038, 1040 (8th Cir. 2003). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged." *Cole v. Homier Dist. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta,* 410 F.3d 1036, 1039 (8th Cir. 2005)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). To meet Rule 9(b) requirements, a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). "The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling

the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Id*. Furthermore, the overarching principles of notice pleading dictate that a plaintiff does not need to plead fraud "with complete insight before discovery is complete." *Gunderson v. ADM Investor Servs., Inc.*, 230 F.3d 1363 (table), 2000 WL 1154423, at *3 (8th Cir. 2000) (quoting *Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998)). As a result, Rule 9(b) does not require a plaintiff to set out specific facts concerning matters that are likely solely known by the defendant. *See, e.g., Abels*, 259 F.3d at 921. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* at 920.

## II.     Background and Facts

Plaintiff filed this action alleging claims for breach of contract, breach of duty of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and quantum meruit. In response, defendant filed a motion to dismiss the complaint for failure to join a required party under Federal Rule of Civil Procedure 19 and failure to state a claim. The motion was rendered moot by the filing of the first amended complaint. Defendant filed another motion to dismiss plaintiff's amended complaint alleging the same grounds.

The following facts pled in plaintiff's amended complaint are accepted as true for purposes of this motion. Plaintiff Robinson Mechanical Contractors Inc. d/b/a Robinson Construction Company ("plaintiff" or "Robinson") is a Missouri corporation with its principal place of business in Perryville, Missouri. Defendant PTC Group Holdings Corp. ("defendant" or "PTC Group") is a Delaware corporation with its principal place of

business located in Wexford, Pennsylvania. PTC Group wholly owns, directs, and controls PTC Seamless Tube Corporation, f/k/a PTC Alliance Pipe Acquisition LLC ("Seamless"), also a Delaware corporation, and PTC Alliance Corp. At all relevant times, PTC Group's CEO, Peter Whiting, and CFO, Thomas Crowley, are listed as and represent themselves to be the CEO and CFO, respectively, of Seamless.

In 2013, Robinson entered into a Professional Services Agreement ("PSA") with Seamless for construction work on Seamless's pipe plant in Hopkinsville, Kentucky. Under the agreement, Robinson would be compensated for its work on a time and material basis. Due to the lack of information about the scope of work, both parties agreed that it was not possible to determine a maximum price. Robinson invoiced Seamless every two weeks for its work. By the middle of November 2014, Seamless owed Robinson more than $7 million on outstanding invoices.

On November 19, 2014, Doug Wilkins, PTC Group's Vice President of Global Manufacturing & Operational Excellence, came to Robinson's main office in Perryville, Missouri and met with Robinson's representatives, including its president Frank Robinson, vice-president Paul Findlay, and construction manager David Monier. Wilkins stated that PTC Group was happy with Robinson's work and that PTC Group's CEO Peter Whiting wanted Robinson to know that he also was very happy with Robinson's work and that they wanted Robinson, which had been working on Phase I of the Hopkinsville plant, to also be the contractor for Phase II. Wilkins noted in the meeting that the project was over PTC Group's budget and that PTC Group had funding and cash flow issues. He requested that Robinson agree to defer a payment then due until after

January 1 and agree to extend the terms for payment from 30 days to 60 days. After the meeting, Wilkins called back and stated that he had been mistaken and that Peter Whiting requested that Robinson extend the payment terms to 90 days rather than 60 days for Phase I.

Subsequently, during the remainder of November and the first two weeks of December 2014, PTC Group made telephone calls to Robinson at its office in Perryville and sent emails to Robinson in Perryville in which the parties discussed PTC Group's request to defer the payment due to January and to extend the payment terms from 30 days to 90 days. Initially, the emails and phone conversations were by Wilkins, and later during the above-referenced period PTC Group's CFO Tom Crowley also engaged in negotiations and email communications with Robinson in Perryville, Missouri. During these discussions, Robinson expressed concern that stretching out the payments from 30 days to 90 days would require a substantial use of Robinson's line of credit and Robinson would be tying up several million dollars of its working capital in the project without being paid. Robinson told PTC Group that a failure to pay could be disastrous to Robinson, expressed concern about Seamless's ability to pay, and requested assurances from PTC Group that funds were available to pay Robinson for its work.

According to Robinson, PTC Group represented, promised, and assured Robinson that it had funds available to pay Robinson and that it would pay Robinson for its work on the Seamless construction project. In connection with these representations, PTC Group sent to Robinson in Perryville a PTC Group organizational chart and a PTC Group financial statement dated September 2014 as evidence that PTC Group had funds

available with which to pay Robinson for its work.  PTC Group also sent to Robinson in

Perryville a document entitled "Summary Borrowing Base Certificate" which showed an

amount of $23,552,735 available under PTC Group's credit facilities and which PTC

Group represented to Robinson was available to pay Robinson for its work.  Crowley and

Wilkins of PTC Group sent these documents to Robinson.  Robinson made the decision

to continue working pursuant to the PSA with Seamless and extend the payment terms to

90 days based on and in reliance on PTC Group's representations.

In reliance on PTC Group's representations and promises that it had funds

available to pay Robinson for its work and that it would pay Robinson for its work on the

Hopkinsville plant, Robinson entered into a letter agreement with PTC Group (though

Seamless was not a signatory) on December 16, 2014, in which Robinson, among other

things, agreed to defer a payment then due until January 2 and to extend payment terms

for all invoices sent after December 1, 2014 from 30 days to 90 days.  The letter includes

the following provision:

> Payments made on behalf of PTC Group Holdings Corp. and its subsidiaries,
> including PTC Seamless Tube Corp, are paid by PTC Group Holdings through its
> central cash management system.  It is our intention that the payment of the
> remaining amount of $6,190,472.42 will be paid to Robinson Construction by wire
> transfer on January 2, 2015.

The letter agreement further provided that if there is any delay in payment beyond the

terms agreed to in the letter agreement, Robinson shall have the right to cease work

immediately until the payments are brought back to terms.  The letter agreement

acknowledged receipt of a payment of approximately $1.7 million made by PTC Group

on December 12, 1014 and provided that a payment of approximately $6 million would

be made to Robinson on January 2, 2015. That payment was made by PTC Group and was electronically deposited by PTC Group in Robinson's bank account at the Bank of Missouri in Perryville on or about January 2, 2015.

Robinson continued its work on the construction project during December 2014 and January, February and the first part of March 2015, at staffing levels as directed by Wilkins, relying upon PTC Group's representations, promises, and the letter agreement. Wilkins directed the activities, priorities, and sequence of Robinson's work after the letter agreement. Under that letter agreement, the next payment on an invoice older than 90 days was due on March 12, 2015. When Robinson learned that Seamless was laying off most of its employees at the jobsite, Robinson sent an email message to Wilkins on February 24, 2015. In that e-mail, Robinson reminded PTC Group that in December Robinson had provided PTC Group a significant extension of credit for 90 day terms on invoices sent after December 1, 2014, and that Robinson continued to incur costs based upon PTC Group's assurance that payments will be made per terms of the agreement. Robinson requested assurance that the invoices would be paid on the due dates pursuant to the agreement. Robinson received no response to its e-mail.

On March 11, 2015, Seamless advised Robinson that it had a dispute regarding Robinson's invoices and would not be making the payment. Thereafter, PTC Group and Seamless have not made any payments to Robinson. Based upon PTC Group's representations and discussions with Robinson regarding deferring payment and extension of payment terms from 30 days to 90 days and the December 16, 2014 letter agreement, Robinson continued to work until March 12, 2015.

7

The payment due Robinson on March 12, 2015 was for Robinson's invoices dated December 12, 2014 covering work and materials for work furnished during the period of November 23, 2014 through December 6, 2014. This work was done during the time when PTC Group was telling Robinson that it was happy with Robinson's work, representing to Robinson that PTC Group wanted Robinson to perform Phase II work on the project, and assuring Robinson that PTC Group had money available and would make it available to pay Robinson for its work. In addition, Seamless and PTC Group received the invoices for that work prior to the December 16, 2014 letter agreement.

During the course of the project, Robinson submitted invoices for its work and materials (including work and materials furnished by Robinson subcontractors) every two weeks. PTC Group received and had knowledge of the bi-weekly invoices and other reports submitted by Robinson. PTC Group and Seamless were aware on a daily basis of the activities on the jobsite. Wilkins, as an officer of PTC Group, was present on the jobsite on most days, including from November 2014 to March 12, 2015, and had access to the invoices, billing reports, and other reports submitted by Robinson.

PTC Group controlled and directed the decisions and activities of Seamless in connection with the Hopkinsville project. PTC Group was the entity that made the decision not to pay Robinson's December 12, 2014 invoices and to assert a purported dispute to avoid the payment due on March 12, 2015. Seamless and PTC Group had Robinson's December 12, 2014 invoices for three months before Seamless first informed Robinson on March 11, 2015 that it had a purported dispute regarding Robinson's invoices and would not be making the payment due. Robinson has not been paid by PTC

Group or Seamless for any work and materials furnished after November 22, 2014.

Robinson is owed more than $14.8 million for the labor and materials that it and its subcontractors have furnished on the construction project.

The March 11, 2015 letter from Seamless did not identify any particular items in the December 2014 invoices that Seamless or PTC Group disputed. Subsequently, later in March 2015 Robinson's representatives met with officers of Seamless and PTC Group in St. Louis County, Missouri, in an attempt to have Seamless and PTC Group identify any particular items in the invoices that Seamless or PTC Group disputed. However, the representatives of Seamless and PTC Group declined to identify any particular items and any particular invoices. Until March 11, 2015, neither PTC Group nor Seamless told Robinson it would not pay Robinson for the work and materials that Robinson was furnishing or for any of the invoices that Seamless and PTC Group was receiving every two weeks.

PTC Group, which wholly owns and controls Seamless, left Seamless wholly dependent on PTC Group for funding its activities. During the construction of the Hopkinsville plant, Seamless had no income (other than approximately $3 million from sale of "scrap"). Seamless was wholly dependent upon PTC Group to provide funds for its ongoing costs and expenses. PTC Group controlled and determined the amount of funding it would provide Seamless for payment of its costs and expenses for construction of the Hopkinsville plant and other incurred costs and expenses. Seamless filed for Chapter 11 bankruptcy on April 26, 2015.

## III.  Discussion

Defendant PTC Group argues that plaintiff's claims must be dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary and indispensable party.  In the alternative, defendant argues that each of plaintiff's claims must be dismissed under Rule 12(b)(6) for failure to state a claim.

### A.  Necessary and Indispensable Party

Defendant argues that dismissal is required for failure to join Seamless, who it contends is a necessary and indispensable party.  Rule 12(b)(7) authorizes dismissal of a cause of action for failure to join a required party under Rule 19.  "Rule 19 governs when joinder of a particular person is compulsory."  *Gwartz v. Jefferson Memorial Hosp. Ass'n*, 23 F.3d 1426, 1428 (8th Cir. 1994) (internal citation omitted).  "A court must first determine whether a [person] should be joined if 'feasible' under Rule 19(a), i.e., whether a person is 'necessary.'"  *Id.* (internal quotation marks and citation omitted).  "If the person is not necessary, then the case must go forward without him and there is no need to make a Rule 19(b) inquiry."  *Id.*

Pursuant to Rule 19(a):

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a). "The focus is on relief between the parties and not on the speculative possibility of further litigation between a party and an absent person." *Gwartz*, 23 F.3d at 1428.

Defendant argues that Seamless is a necessary and indispensable party because any alleged liability under the letter agreement depends on the outcome of Seamless's payment dispute. Defendant maintains that resolution of this suit in Seamless's absence would cause prejudice by deciding matters weighing upon Seamless's liability without its participation and result in costly, duplicative litigation with potentially conflicting outcomes. In response, plaintiff argues Seamless is not a required party because the claims in this matter are distinct contract, tort, and equitable claims against defendant for the separate actions of defendant, not Seamless.

Defendant's argument that adjudication without Seamless will impair its ability to protect its interest by exposing it to indemnity claims if PTC Group is held liable misconstrues plaintiff's claims. Plaintiff is not making a claim against PTC Group based on vicarious liability for Seamless, which could potentially expose Seamless to an indemnity claim by PTC Group. There is no allegation or claim in the amended complaint that defendant is liable for the $14.8 million owed to plaintiff simply because of Seamless's affiliation as a subsidiary of defendant. Instead, plaintiff's claims are directed at defendant's own actions, separate and apart from any action by, or contract

with, Seamless. Plaintiff's contract claim is limited to the letter agreement between plaintiff and defendant. Seamless is not a party to that agreement. Further, plaintiff's tort and other claims are based on the actions of defendant, not Seamless. A judgment on plaintiff's claims against defendant would not give rise to an indemnity claim by defendant against Seamless.

**B.      Failure to State a Claim**

**1.      Breach of Contract**

At the outset, the parties disagree as to which state's law governs plaintiff's claims. Defendant contends Pennsylvania law applies and plaintiff argues Missouri law applies. However, plaintiff's breach of contract claim, under either Missouri or Pennsylvania law, fails to state a claim.

Plaintiff is clear, in its complaint and in its response to defendant's motion, that its claims against defendant arise from the letter agreement that is independent of and "does not incorporate the terms . . . of the [PSA] with Seamless." Plaintiff argues that defendant agreed to pay for the future debts of Seamless, its wholly owned and controlled subsidiary, to Robinson through its own cash management system. Plaintiff relies primarily on the following statements in the letter agreement:

> As we agreed, you released payment of $1,749,974.00 on Friday 12-12-14, receipt of which is hereby acknowledged and we will accept payment of the balance of $6,190,472.42 on January 2, 2015 by wire transfer in return for the concessions below. As a part of this agreement we would also be willing to extend you payment terms for all invoices sent after December 1, 2014 to 90 days.
>
> . . .

> Payments made on behalf of PTC Group Holdings Corp. and its subsidiaries, including PTC Seamless Tube Corp, are paid by PTC Group Holdings through its central cash management system.

Under these provisions, the only payment defendant agreed to make was for the outstanding balance owed by Seamless to plaintiff for work billed in October and November by January 2, 2015. Although the foregoing provisions also state the method of payment for the outstanding balance that defendant agreed to pay, it does not constitute a promise by defendant to guarantee or make future payments owed by Seamless.

The letter agreement, standing alone, is a contractual agreement for defendant to pay the balance Seamless owed for work billed in October and November 2014 by January 2, 2015. The parties agree that occurred. Plaintiff's breach of contract claim alleging defendant was required to make future payments owed by Seamless is not supported by the plain language of the letter agreement. In the letter agreement defendant agreed to pay $7,940,446.42 owed by Seamless to plaintiff as of December 30, 2014. The amount due was to be paid in two payments. Defendant agreed to make the payments to plaintiff from its central cash management system. Plaintiff agreed to extend payment terms for all invoices sent after December 1, 2014 from 30 days to 90 days. But nowhere in the letter agreement does defendant commit to pay, or guarantee payment of, those invoices for Seamless. Plaintiff's breach of contract claim, therefore, fails to state a claim and defendant's motion to dismiss this claim will be granted.

## 2.    Breach of Duty of Good Faith and Fair Dealing

"Missouri law implies a covenant of good faith and fair dealing in every contract."

*Kmak v. American Century Companies, Inc.*, 754 F.3d 513 (8th Cir. 2014) (quoting

*Farmers' Elec. Co-op., Inc. v. Mo. Dep't of Corrs.*, 977 S.W.2d 266, 271 (Mo. banc

1998)).  As stated above, the letter agreement, standing alone, is a contractual agreement

for defendant to pay the balance Seamless owed for work billed in October and

November 2014 by January 2, 2015.  The parties agree that occurred.  Having determined

that no contract existed requiring defendant to make future payments, plaintiff's claim for

breach of duty of good faith and fair dealing is moot.  Defendant's motion to dismiss this

claim will be granted.

## 3.    Fraudulent and Negligent Misrepresentation

The parties disagree as to which state's law governs plaintiff's tort claims.

Defendant contends Pennsylvania law applies and plaintiff argues Missouri law applies.

To determine which state's law governs the claims, this Court, sitting in diversity, must

apply the choice-of-law rules of the forum state.  *Prudential Ins. Co. of Am. v. Kamrath*,

475 F.3d 920, 924 (8th Cir. 2007).  "Before applying the forum state's choice-of-law

rules, however, a trial court must first determine whether a conflict exists."  *Id.*

Defendant argues that Pennsylvania law governs plaintiff's claims because the

PSA *between plaintiff and Seamless* includes a choice-of-law provision.  Defendant

contends that the letter agreement should be viewed as an agreement that was drafted

with the intent that it would be between plaintiff and Seamless and would modify the

terms of the PSA.  It argues, therefore, that the Pennsylvania choice-of-law provision in

the PSA controls. Missouri honors choice-of-law provisions in contracts where application of the selected forum's law is not contrary to a fundamental policy of Missouri. *Kagan v. Master Home Prods., Ltd.*, 193 S.W.3d 401, 407 (Mo.App. E.D. 2006). But it is indisputable that the letter agreement does not contain a choice-of-law provision. Plaintiff is clear that its claims against defendant arise from the letter agreement, which plaintiff declares "does not incorporate the terms (let alone choice-of-law provision) of the [PSA] with Seamless." Plaintiff's claims do not arise from the PSA with Seamless but instead, are based on the letter agreement with defendant and defendant's own actions. As a result, there is no applicable choice-of-law provision.

Without a choice-of-law provision, Missouri choice-of-law rules require courts to apply the "most significant relationship" test under the Restatement (Second) Conflict of Laws. *Crater Corp. v. Lucent Technologies, Inc.*, 625 F.Supp.2d 90, 800-801 (E.D. Mo. 2007) (citing *Dillard v. Shaughnessy, Fickel and Scott Architects, Inc.*, 943 S.W.2d 711, 715 (Mo.App. W.D. 1997 and *Highwoods Props, Inc. v. Executive Risk Indem., Inc.*, 407 F.3d 917, 920 (8th Cir. 2005). "Depending on whether the claim sounds in contract or tort law, different factors will be utilized to determine the most significant relationship." *Id.* at 801.

When determining the most significant relationship test for a tort claim involving fraud or misrepresentation, the Restatement (Second) Conflict of Law § 148(1) instructs that:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local

law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) Conflict of Law § 148(1).

However, "[w]hen the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made," § 148(2) instructs that :

> [T]he forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
> (a)     the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b)     the place where the plaintiff received the representations,
> (c)     the place where the defendant made the representations,
> (d)     the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e)     the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f)     the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) Conflict of Law § 148(2).  In certain tort cases, courts have "focused on the plaintiff's location as the place where an economic injury occurs because it is where 'the economic impact' is 'felt.'" *American Guarantee and Liability Ins. Co. v. U.S. Fidelity & Guar. Co.*, 668 F.3d 991 (8th Cir. 2012).

Based on the facts pled in the amended complaint, Missouri law is applicable to plaintiff's tort claims for fraudulent and negligent misrepresentation.  Plaintiff suffered pecuniary harm in Missouri on account of its reliance on defendant's false

representations. Plaintiff's decision to extend credit terms for Seamless from 30 days 90 days and to continue work in reliance took place in Missouri where defendant made the false representations to plaintiff. Defendant's officers traveled to Missouri to make the request for additional credit and to make these false representations and promises. Plaintiff is a Missouri corporation, has its principal place of business in Missouri, and Missouri is the place where plaintiff received the representations and where it acted in reliance upon the defendant's representations.

Defendant further contends that even under Missouri law plaintiff fails to state a claim for fraudulent or negligent misrepresentation. "The elements of fraudulent misrepresentation are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010). "The elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a

pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010).

Here, the Court finds that plaintiff has pled sufficient facts to state fraudulent and negligent misrepresentation claims for relief that are facially plausible. Additionally, plaintiff has pled sufficient facts to meet Rule 9(b) requirements that a pleading must include "such matters as the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby."

The amended complaint alleges that in November and December 2014, defendant represented, promised, and assured plaintiff that it had funds available to pay plaintiff and that it would pay plaintiff for its work. Plaintiff told defendant that a failure to pay could be disastrous to plaintiff, expressed concern about Seamless's ability to pay, and requested assurances from defendant that funds were available to pay plaintiff for its work. In connection with these representations, defendant sent to plaintiff in Perryville a PTC Group organizational chart and a PTC Group financial statement dated September 2014 as evidence that it had funds available with which to pay plaintiff for its work. Defendant also sent to plaintiff in Perryville a document entitled "Summary Borrowing Base Certificate" which showed an amount of $23,552,735 available under PTC Group's credit facilities and which defendant represented to plaintiff was available to pay for its work. Crowley and Wilkins of PTC Group sent these documents to plaintiff. Plaintiff made the decision to continue working on the Seamless construction project and extend

the payment terms on invoices to 90 days based on and in reliance on defendant's representations.

Defendant, which wholly owns and controls Seamless, left Seamless wholly dependent on defendant for funding its activities. During the construction of the Hopkinsville plant, Seamless had no income (other than approximately $3 million from sale of "scrap"). Seamless was wholly dependent upon defendant to provide funds for its ongoing costs and expenses. Defendant controlled and determined the amount of funding it would provide Seamless for payment of its costs and expenses for construction of the Hopkinsville plant and other incurred costs and expenses. Plaintiff continued its work on the construction project during December 2014 and January, February and the first part of March 2015relying upon defendant's representations and promises. Plaintiff has not been paid by defendant or Seamless for any work and materials furnished after November 22, 2014. Plaintiff is owed more than $14.8 million for the labor and materials that it and its subcontractors have furnished on the construction project.

Under these circumstances, plaintiff states a claim for fraudulent misrepresentation and negligent misrepresentation. Defendant's motion to dismiss these claims will be denied.

### 4.     Promissory Estoppel

"A claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2009)

(citing *Zipper v. Health Midwest*, 978 S.W.2d 398, 411 (Mo.App.1998); *see In re Jamison's Estate*, 202 S.W.2d 879, 886 (Mo. 1947)). "The promise giving rise to the cause of action must be definite, and the promise must be made in a contractual sense." *Id.* (citing *Zipper*, 978 S.W.2d at 411).

The facts that support plaintiff's claims for fraudulent and negligent misrepresentation also support plaintiff's claim for promissory estoppel. Plaintiff alleges in the amended complaint that defendant promised to pay plaintiff for its future work on the Seamless construction project. Based on this promise, plaintiff agreed to keep working and extends the payment terms for the invoices from 30 days to 90 days. During the discussions in which defendant made its promises, plaintiff expressed concern about payment because failure to pay could be disastrous to its business. Plaintiff continued to work and incurred more than $14.8 million for the labor and materials that it and its subcontractors furnished on the Seamless construction project that has not been paid by defendant. Relying on a promise to pay, incurring $14.8 million dollars, and then not being paid certainly qualifies as an injustice. Defendant argues the remedy of promissory estoppel is not available when a contract exists that covers the issues for which damages are sought. This Court has found that the letter agreement was not a contract for defendant to pay plaintiff's future work. Further, plaintiffs are permitted under Missouri law to plead alternative claims. At this motion to dismiss stage, based on the facts pled in the amended complaint, plaintiff states a claim for promissory estoppel that is facially plausible. Defendant's motion to dismiss this claim will be denied.

## 5.     Quantum Meruit

"Where there is no formal contract, a promise to pay for services or materials may be implied by the law.  This is referred to as quasi-contract or quantum meruit." *City of Cape Girardeau ex rel. Kluesner Concreters v. Jokerst, Inc.*, 402 S.W.3d 115, 122 (Mo. App. E.D. 2013) (citing *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo.App. W.D. 1984) (citing *Donovan v. Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 884 (1943))).  "The essential elements of such a claim are (1) that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, (2) that the materials or services had reasonable value, and (3) that the defendant has failed and refused to pay the reasonable value of such materials or services despite the demands of plaintiff." *Id.* (citing *County Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 710 (Mo.App. E.D. 2007)).  "The principal function of this type of implied contract is the prevention of unjust enrichment." *Id.* (quoting *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 711 (Mo.App. E.D.2002)).  "In quantum meruit, there is no requirement of an express agreement between the parties or a promise on the part of the party to be bound." *Id.* at 122-23 (citation omitted).

On this claim, the Court finds that plaintiff fails to state a claim for relief that is facially plausible.  Plaintiff provided materials and services to Seamless pursuant to the contract plaintiff had with Seamless for the construction of Seamless's pipe plant.  Although plaintiff argues that defendant sought and received benefits from plaintiff's work, no facts are alleged that the materials and services were provided to defendant, as opposed to Seamless.  Defendant's motion to dismiss this claim will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss plaintiff's complaint (ECF #12) is **DENIED as moot** due to the filing of the amended complaint.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss plaintiff's amended complaint (ECF #20) is **GRANTED in part** and **DENIED in part**. Specifically, plaintiff's claims for breach of contract, breach of duty of good faith and fair dealing, and quantum meruit are dismissed. The motion is denied as to plaintiff's claims for fraudulent misrepresentation, negligent misrepresentation, and promissory estoppel.

Dated this 31st day of March, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE