UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| ROBINSON MECHANICAL | ) |
| CONTRACTORS INC. d/b/a ROBINSON | ) |
| CONSTRUCTION COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-CV-77 SNLJ |
| | ) |
| PTC GROUP HOLDINGS CORP., and | ) |
| PTC SEAMLESS TUBE CORP., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's motion for default judgment against defendant PTC Seamless Tube Corp. ("Seamless") (#104) and plaintiff's motion to strike the counterclaims of Seamless's parent company, PTC Group Holdings Corp. ("PTC") (#108). PTC opposes both motions. The motions are fully briefed, including supplemental briefing, and the issues are ripe for disposition.

**I.     Motion for Default Judgment**

**A.     Background**

Plaintiff filed this lawsuit against defendant PTC on May 5, 2015. Plaintiff had performed extensive construction work at a PTC's subsidiary's steel tubing manufacturing plant in Hopkinsville, Kentucky, pursuant to a Professional Services Agreement ("PSA") and additional statements of work ("SOWs") between plaintiff and a PTC subsidiary, Seamless. When Seamless fell behind on paying its invoices from

plaintiff, PTC stepped in and made some payments pursuant to a new "letter agreement" between PTC and plaintiff dated December 16, 2014, for invoices due by the end of December 2014.  PTC made the payments discussed in the letter agreement but made no payments for future work done by plaintiff for Seamless.  In fact, after the payments made by PTC in accordance with the letter agreement, neither Seamless nor PTC made any payments to plaintiff for plaintiff's work after November 23, 2014.

Plaintiff's first invoice after the letter agreement covered work between November 23, 2014 and December 6, 2014, with the invoice given to PTC and Seamless on December 12, 2014.  Because of the 90-day due date, payment for this invoice was not due until March 12, 2015.

On March 11, one day before Seamless's payment was due pursuant to the letter agreement, nearly three months after the defendants were given plaintiff's invoice, Seamless sent a letter to plaintiff advising plaintiff that Seamless had a dispute regarding plaintiff's invoice and that it would not make the payment.  The letter did not refer to any particular invoice and did not explain what Seamless disputed within the invoice.  Further, this was the first time that defendants advised plaintiff that defendants disputed plaintiff's invoices or would not pay plaintiff's invoices.  Plaintiff ceased work and removed its equipment from the job site on March 12.  Plaintiff alleges that the parties met in-person several weeks after the payment dispute and defendants again declined to identify any particular invoices or items within invoices that defendants disputed.

Since then, neither Seamless nor PTC has paid plaintiff for its work done after November 23, 2014.  Insolvent or approaching insolvency, Seamless applied for

bankruptcy on April 26, 2015 and was dissolved, pursuant to Delaware law, on January 29, 2016 (#68-3).[1] The Bankruptcy Court, however, dismissed Seamless's Chapter 11 and adversary proceeding cases, stating that Seamless remained legally liable for all debts as if the bankruptcy had not been filed. Ultimately, plaintiff claims that it is owed $14.8 million for labor and materials that it and its subcontractors furnished for the construction project plus $3.7 million in accrued interest. Despite the fact that plaintiff had a contract with the PTC subsidiary – Seamless – plaintiff filed its first amended complaint solely against PTC on the basis of the 2014 letter agreement between PTC and plaintiff. Plaintiff brought six claims against PTC – (1) breach of contract, (2) breach of duty of good faith and fair dealing, (3) fraudulent misrepresentation, (4) negligent misrepresentation, (5) promissory estoppel, and (6) quantum meruit.

PTC moved to dismiss plaintiff's first amended complaint for failure to state a claim. The Court partially granted PTC's motion on March 31, 2016 – dismissing three of plaintiff's claims including breach of contract, breach of duty of good faith and fair dealing, and quantum meruit (#27). The parties then engaged in discovery. Plaintiff filed a motion to file a second amended complaint on October 31, seeking to add Seamless as a defendant, to add a new count to pierce the corporate veil between Seamless and PTC, and to reassert counts previously dismissed based upon new allegations in light of facts discovered since the filing of the first amended complaint (#40). The Court granted the plaintiff's motion on January 27, 2017 (#65).

---

[1] In bankruptcy, Seamless listed secured obligations of "approximately $178 million and unsecured obligations of approximately $118 million for a total amount of nearly $300 million of debt, in addition to other obligations it owed to its various vendors and contractors such as Robinson." Pl. Second Am. Compl. ¶ 54.

Plaintiff seeks to pierce Seamless's corporate veil because plaintiff alleges that PTC and its wholly-owned subsidiary, Seamless, acted as a single economic entity and are alter egos. Although Seamless has the capacity to sue and be sued under Delaware law, *see* Del. Code Ann. tit. 8, § 278, Seamless failed to file an appearance or answer plaintiff's second amended complaint and is currently in default (#97). After default, plaintiff moved under Federal Rule of Civil Procedure 55(b) for the Clerk of Court to enter default judgment against Seamless in the amount of $18,590,599.14 (#104).

Even though PTC has consistently maintained that it does not represent Seamless, PTC opposes the plaintiff's motion for default judgment. PTC contends that plaintiff's damages do not constitute a sum certain and that default judgment is improper under Rule 54(b) because an entry of default judgment would lead to inconsistent results at trial (#106). In its reply, plaintiff claims that PTC is not the subject of plaintiff's motion for default judgment and therefore wrongly inserted itself in its motion against Seamless. Further, plaintiff maintains that the amount of damages sought is a sum certain because upon default, all of plaintiff's well-pleaded facts from its complaint were deemed true to establish Seamless's liability, and plaintiff submitted an affidavit and a spreadsheet detailing the amount of damages stemming from that liability.

The Court then directed plaintiff and PTC to submit additional briefing on the issue of the PTC's ability to respond to plaintiff's motion for default judgment against Seamless, in light of Seamless's ability to sue and be sued under Delaware law, and for additional briefing on the preclusive effects of the entry of default judgment against Seamless.

**B.     Legal Standard**

Default judgment consists of a two-step inquiry: first, the clerk must enter a default against a party whom a judgment for affirmative relief is sought if that party failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a). Second, the default judgment must be entered. Default judgment can be entered in two ways: by the Clerk of the Court if the plaintiff's claim is for a sum certain or that can be made certain by computation, or, by the Court if the plaintiff's claim is not for a sum certain. Fed. R. Civ. P. 55(b)(1), (2). The first step – the entry of default – acts as a means to cut off the defaulting defendant's ability to contest the factual allegations against it. "[I]t is the law that once a default is entered, a defendant on default has no further standing to contest the factual allegations of plaintiff's claim for relief." *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 n.7 (8th Cir. 1988) (*quoting Caribbean Produce Exchange v. Caribe Hydro–Trailer, Inc.,* 65 F.R.D. 46, 48 (D.P.R.1974)). Further, a defaulting defendant "is deemed to have admitted all well pleaded allegations in the complaint." *Id.* However, the plaintiff must still prove the facts as to the amount of damages – which may or may not require a supplemental hearing or proceeding. *Taylor*, 859 F.2d at 1333; *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (internal citations omitted). "[A] claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." *KPS & Assocs.*, 318 F.3d at 18.

Here, PTC contends that the amount of damages is not a "sum certain." Moreover, PTC contends that the default judgment is inappropriate because when an action involves multiple claims or parties, a court "may direct entry of a final judgment as

to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). One such just reason for delay is the risk of inconsistent judgments. Historically, when defendants are sued as jointly liable, and "less than all default, the court may not enter default judgment against the defaulted defendants until the liability of the nondefaulted defendants has been decided." *McMillian/McMillian, Inc. v. Monticello Ins. Co.*, 116 F.3d 319, 321 (8th Cir. 1997) (*citing Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). This rule has been expanded in the Eighth Circuit to include not only jointly liable defendants, but also co-defendants that are similarly situated. "When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment." *Angelo Iafrate Const.*, 370 F.3d at 722. The Eighth Circuit has also held that "[w]hen there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved." *Pfanenstiel Architects, Inc.,* 978 F.2d at 433.

Therefore, in cases involving multiple claims, multiple and similar defendants, and similar facts, courts must carefully examine the implications of granting default judgment against one defendant when other defendants do not default. This is so because, typically, "a default judgment against one defendant does not preclude a codefendant from contesting the plaintiff's claim." *Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432-33 (8th Cir. 1992). Put another way, a default judgment entered

6

by the court binds only "the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." *Angelo Iafrate Const., LLC v. Potashnick Const., Inc.*, 370 F.3d 715, 722 (8th Cir. 2004) (internal citations omitted).

All that said, the grant of default judgment may in some cases preclude surviving defendants from contesting the claims within the default judgment as to the defaulting parties. The doctrine of res judicata, known modernly as claim preclusion, "bars relitigation of the same claim between parties or their privies where a final judgment has been rendered upon the merits by a court of competent jurisdiction." *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 517 (8th Cir. 1995) (internal quotation omitted). The doctrine of res judicata is designed to promote judicial economy by preventing litigants from bringing repetitive lawsuits based on the same cause of action. *United States v. Brekke*, 97 F.3d 1043, 1047 (8th Cir. 1996). In the Eighth Circuit,[2] four requirements must be found for res judicata to apply: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their

---

[2] "The law of the forum that rendered the first judgment controls the res judicata analysis." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (*quoting Laase v. County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). Here, plaintiff moves this Court, sitting in diversity jurisdiction, to enter default judgment against Seamless. As a matter of federal common law, this Court would therefore give any previous judgment the same claim preclusive effect that Missouri state courts would give to a state court judgment. *Id.* (*citing Semtek Int'l., Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). Upon lengthy research, this Court concludes that Missouri state courts apply the doctrine of claim preclusion similarly, if not the same, as federal courts in the Eighth Circuit. *See*, *e.g.*, *Am. Polled Hereford Ass'n v. City of Kansas City*, 626 S.W.2d 237, 240-43 (Mo. *banc* 1982); *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 500-02 (Mo. *banc* 1991); *Chesterfield Vill., Inc. v. City of Chesterfield*, 64 S.W.3d 315, 318-321 (Mo. *banc* 2002); *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 532-36 (Mo. *banc* 2002). Therefore, the Court will look to Eighth Circuit precedent for guidance for preclusive purposes. Notably, neither party cited Missouri law in briefing on preclusive issues.

7

privies." *Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir. 1983). "The party against whom res judicata is to be used, however, must have had 'a full and fair opportunity to investigate and litigate the matter concluded,' *id.,* or have been in privity with a party that had such an opportunity." *Envtl. Dynamics, Inc. v. Robert Tyer & Associates, Inc.*, 929 F. Supp. 1212, 1243 (N.D. Iowa 1996) (*quoting Lovell,* 719 F.2d at 1376).

As to the requirement for a final judgment on the merits, "even a default judgment operates as res judicata and is conclusive of whatever is essential to support the judgment." *Kapp v. Naturelle, Inc.*, 611 F.2d 703, 707 (8th Cir. 1979) (internal citations omitted). As to the third element, in the Eighth Circuit, suits are based upon the same claims or causes of action if they "arise[] out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir. 1990). Res judicata bars subsequent actions that assert the same claims as the first, but "also has a preclusive effect on specific *issues* decided in the prior lawsuit. Thus, 'claim preclusion' also provides that 'a final judgment on the merits of an *action* precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Envtl. Dynamics, Inc.*, 929 F. Supp. at 1245 (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)) (emphasis in original).

The fourth requirement --- privity --- may be found when the defendants from both suits "have a close relationship, bordering on near identity." *Robbins v. Dist. Court of Worth County, Iowa*, 592 F.2d 1015, 1017 (8th Cir. 1979). Courts "focus not on the nature of their relationship in general, but on the identity of their interests," *Daley v. Marriott Intern., Inc.,* 415 F.3d 889, 897 (8th Cir. 2005), and "treat all those whose

8

interests are involved in the litigation and who conduct and control the action or defense as real parties, and hold them concluded by any judgment that may be rendered." *Midcontinent Broadcasting Co. v. Dresser Industries, Inc.*, 669 F.2d 564, 566-67 (8th Cir. 1982) (*quoting Schell v. Walker*, 305 N.W.2d 920, 922 (S.D. 1981)).

### C.   Analysis

At the outset, the Court notes the obvious: if there is preclusive effect from a default judgment against Seamless, then there is no risk of inconsistent judgments. In other words, there is no possibility of inconsistent results if res judicata precludes PTC from litigating Seamless's liability.

#### 1.   The Preclusive Effect of the Entry of Default Judgment as to Plaintiff's Breach of Contract Claim Against Seamless

Only allegations underlying plaintiff's claims *against Seamless* carry preclusive effect. Therefore, the entry of default judgment would have no preclusive effect as to plaintiff's alter ego, fraudulent misrepresentation, or negligent misrepresentation claims against PTC. But, because plaintiff contends that PTC breached the letter agreement – which is allegedly a guaranty by PTC for Seamless's payments under the PSA – PTC contends it will be deprived of its day in court if not allowed to defend the debtor of the alleged guaranty, Seamless.

This concern is eased, however, by the fact that Seamless had and continues to have the ability to represent itself under Delaware law, while PTC, its parent company and alleged guarantor, is an active party in this litigation. The case of *Drill South, Inc. v. International Fidelity Ins. Co.*, 234 F.3d 1232, 1234 (11th Cir. 2000), is instructive. In

9

*Drill South*, a surety company issued payment and performance bonds on behalf of a principal company, and subsequently, a subcontractor entered into a contract with the principal. *Id*. The principal defaulted on the contract. *Id.* The subcontractor then moved for default judgment against the principal. *Id*. The surety was an active party in the litigation, had authority to represent the principal in the action, but instead the surety chose not to represent the principal. *Id.* The principal never appeared, and default judgment was entered. *Id*. at 1234-35. Afterwards, the district court, relying upon the entry of default judgment against the principal, found that the surety was also bound by the default judgment and entered final judgment against the surety. *Id*. The surety appealed. *Id*.

The Eleventh Circuit Court of Appeals affirmed the district court, holding that the default judgment bound the surety because the surety "had full knowledge of the potential for the default judgment against [principal] and possessed numerous opportunities to defend the ultimate judgment" while the surety also "had the legal right to step in and defend [principal] against the default judgment at every stage of the proceedings." *Id*. at 1235-36. "[T]he general rule that has emerged is that a surety is bound by any judgment against its principal, default or otherwise, when the surety had full knowledge of the action against the principal and an opportunity to defend." *Id*. at 1235. *See also Lake County ex rel. Baxley v. Massachusetts Bonding & Ins. Co.*, 75 F.2d 6, 8 (5th Cir. 1935). The court focused on the right of the surety to represent the principal, compared to an obligation to do so, but elected not to defend the principal. *Id*. at 1235-1236. The court also found that there was no risk of inconsistent judgments

10

under *Frow*, 82 U.S. 552 because the entry of default judgment against the principal also bound the surety.

Although *Drill South* involved a contract of suretyship, by analogy it is persuasive authority for the case at hand, where PTC is alleged to be a guarantor for Seamless. Here, the extent of PTC's liability for the alleged breach of the letter agreement is predicated upon Seamless's liability pursuant to the breach of the PSA. If Seamless is not liable, then PTC cannot be. But PTC is not necessarily liable *even if* Seamless is liable, as plaintiff must still prove that the letter agreement constitutes a guaranty by PTC. With this in mind, it is clear from the facts of this case that PTC had full knowledge of this action against Seamless, had the right and opportunity to defend Seamless, was aware of potential preclusive issues, but still chose not to defend Seamless. PTC is the ongoing parent corporation of its now dissolved subsidiary, Seamless. As its parent, PTC retained the power to arrange for Seamless to defend itself by hiring counsel or by appointing an agent to represent its interests. Also, PTC itself could have elected to defend Seamless as to its liability on the basis of the parent-subsidiary relationship as well as the alleged guarantor-obligor relationship. In fact, this Court previously ruled that PTC and Seamless were joint-clients for discovery purposes. It follows that PTC not only had the right to defend Seamless, but also had the tools to do so. Instead, Seamless has not appeared nor appointed anyone to do so, and PTC has expressly indicated that it does not represent Seamless.

PTC --- and only PTC --- made a choice to not defend Seamless as to Seamless's liability. The consequence of this decision is the entry of default against Seamless. PTC

opposed plaintiff's motion for default judgment, not in an attempt to defend Seamless, but to protect its own interests. Because PTC had full knowledge of this action, the possible repercussions of the entry of default judgment, and the right to defend Seamless, PTC will not be allowed to "stand back and allow a judgment to be taken setting the amount of recovery against [Seamless] without similarly being bound by the judgment." *Drill South*, 234 F.3d at 1236.

### 2. Sum Certain

Default judgment can only be entered by the Clerk of Court if the plaintiff's claim is for a sum certain or that can be made certain by computation. Fed. R. Civ. P. 55(b)(1). Plaintiff contends that the allegations deemed true upon Seamless's default establish Seamless's liability. Further, plaintiff contends that its submitted evidence – consisting of an affidavit and an invoice calculation – establish a sum certain of $18,590,599.14 for that liability. PTC disagrees, again presenting arguments establishing why it believes that it is not liable in this action in addition to presenting arguments that should, and could, have been made by Seamless as to Seamless's liability. Even if PTC were allowed to raise these points with respect to the certainty of damages against Seamless, the arguments would still fail on their merits.

Plaintiff submitted extrinsic evidence establishing the certain amount of damages stemming from that liability, which included a spreadsheet that details all of the unpaid invoices sent by plaintiff to Seamless in connection with plaintiff's construction work for Seamless. In addition, the spreadsheet details the amount of interest accrued on the unpaid invoices, under Kentucky law, owed by Seamless to plaintiff. In an affidavit, Paul

Findlay – the current president of plaintiff – affirmed that the spreadsheet's numbers are correct. In an effort to prevent the entry of default judgment, PTC asserts several arguments to contest whether the damages sought constitute a sum certain.

Nonetheless, PTC contends that the amount of damages have been disputed since March 11, 2014, when Seamless formally disputed plaintiff's invoices. However, Seamless never identified what invoices were contested, what amount was contested, or otherwise presented any evidence establishing that plaintiff was not owed what its invoices indicated it was owed. Even now, PTC does not assert what invoices are incorrect or otherwise allege that the numbers plaintiff asserts are incorrect. Therefore, this general argument presented by PTC fails for want of evidence showing that plaintiff's damages computation is somehow incorrect.

### D. Conclusion

Having determined that a sum certain has been established and that there would be no risk of inconsistent judgments due to the preclusive effect of a default judgment against Seamless, there is no reason to delay the entry of judgment. Therefore, plaintiff's motion for default judgment (#104) is granted.

## II. Motion to Strike PTC's Counterclaims

Next, the Court turns to PTC's counterclaims, which it filed on June 15, 2017 as part of its answer to plaintiff's second amended complaint ("SAC") (#108). PTC's two counterclaims are for breach of contract and fraudulent inducement. These claims relate to plaintiff's work at the Hopkinsville project in addition to plaintiff's representations with respect to that project. Plaintiff maintains that PTC's counterclaims were filed,

without leave of the Court to do so, long after the Case Management Order allowed the parties to amend their pleadings. Plaintiff claims that there is no reason under Rule 15 or Rule 16 for the Court to allow PTC to file these counterclaims now. PTC responds that the SAC is substantially different than plaintiff's previous complaint, including the addition of a new party, Seamless, four "new" asserted (or re-asserted) claims, and factual allegations relating to those claims. Because of this, PTC states, plaintiff's SAC changed the theory or scope of the case and therefore PTC's answer and counterclaims were timely filed under Rule 12. Alternatively, PTC asks for the Court's leave to amend its pleadings to add its counterclaims under Rule 15 or 16.

The Court agrees with PTC as to its ability to file an answer to plaintiff's SAC without leave of Court, in light of the addition of a new party, new or renewed claims of liability, and new or more detailed factual allegations as compared to plaintiff's prior pleading. "When a plaintiff files an amended complaint which changes the theory or scope of the case, the defendant is allowed to plead anew as though it were the original complaint filed by the Plaintiff." *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 832 (N.D. Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir. 2000). Here, against plaintiff's opposition, the Court finds that the allegations in plaintiff's SAC changed the theory or scope of the case by re-asserting its claims of breach of contract, breach of covenant of good faith and fair dealing, and quantum meruit in addition to pleading a new claim of alter ego liability. Therefore, PTC could file its answer without leave of Court, and in any event, leave is granted. That is not to say, though, that the Court will allow PTC's counterclaims to survive.

PTC's "direct" counterclaim for breach of contract allegedly is derived from its letter agreement with plaintiff, but it is plainly based on facts relating to Seamless's or plaintiff's liability stemming from plaintiff's work for Seamless under the PSA. In essence, PTC's breach of contract counterclaim asserts that plaintiff breached the letter agreement with PTC when it breached the PSA with Seamless. Whether PTC asserts this counterclaim on its own behalf, or is attempting to assert Seamless's counterclaim, PTC's breach of contract claim is subject to res judicata. Seamless's liability is established; those facts establishing its liability were deemed admitted as to Seamless upon its default, and upon entry of default judgment, those facts carry a preclusive effect as to PTC's ability to contest those facts that established Seamless's liability. And it necessarily follows that any defenses available to Seamless are precluded as well.

PTC also maintains that because it is alleged to have guaranteed Seamless's future payments to plaintiff, that it may assert Seamless's counterclaim for the underlying contract between plaintiff and Seamless. Again, however, the default judgment against Seamless precludes PTC from raising any defenses Seamless may have had.

In contrast to PTC's breach of contract and guaranty counterclaims, its fraudulent inducement counterclaim essentially asserts that plaintiff made representations to Seamless *and* PTC to convince PTC to enter into the letter agreement with plaintiff. PTC contends those misrepresentations overstated plaintiff's ability to timely, and within budget, complete its contractual obligations to Seamless. Even though some factual allegations carry a res judicata effect in this case, not all do. Only those factual allegations from plaintiff's SAC that establish Seamless's liability in light of the claims

15

brought against Seamless carry preclusive effect. However, because PTC's fraudulent inducement counterclaim stems, mostly, from plaintiff's representations to PTC (as compared to Seamless) and because PTC would be the injured party (as compared to Seamless), PTC's fraudulent inducement counterclaim is properly asserted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for default judgment (#104) against defendant Seamless is **GRANTED**, and the Clerk shall enter the default judgment accordingly.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike defendant PTC's counterclaims (#108) is **GRANTED** in part and **DENIED** in part.

Dated this  1st  day of September, 2017.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE